## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

SHELIA ANN MCCOY,

                 Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security
Administration,

                 Defendant.

Case No. 4:19-cv-00704-NKL

## ORDER

Plaintiff Shelia Ann McCoy seeks review of Defendant's decision denying her claim under Title II of the Social Security Act for disability insurance benefits. For the reasons set forth below, the Court affirms the Administrative Law Judge's decision.

### I. BACKGROUND

On December 28, 2017, McCoy filed a claim for disability insurance benefits, alleging an onset date of September 18, 2017. Tr. 27.

The Administrative Law Judge (ALJ) concluded after a hearing that McCoy had the following severe impairments: fibromyalgia, chronic obstructive pulmonary disease (COPD), asthma, emphysema, gastrointestinal disorder, anxiety disorder, degenerative disc disease, post-traumatic stress disorder (PTSD) and affective disorder. Tr. 30. The ALJ found that McCoy had the following residual functional capacity (RFC) to perform light work with limitations:

> [T]he claimant has the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently. She can stand or walk for six hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. She can push or pull in the limits for lifting and carrying. She should avoid concentrate[d] exposure to temperature extremes, and humidity. She should work in a filtered air environment with HVAC. She can frequently bend, stoop, kneel, crouch, and crawl.

1

She can understand, remember, and carry out simple work instructions and tasks at a SVP 2 level. She can have occasional contact with supervisors and the general public. She should not do teamwork types of job duties. She should no[t] work with the general-public as a primary job duty.

Tr. 32. Based on the testimony of the vocational expert (VE), the ALJ concluded that given McCoy's RFC, she would be able to perform the requirements of representative occupations such as a retail marker, inserting machine operator, and electronics sub-assembler. Tr. 39–40. Therefore, the ALJ determined McCoy was able to perform work that exists in significant numbers in the national economy and was not "disabled" as defined by the Social Security Act. Tr. 40. The ALJ's decision, as the final decision by the Commissioner, is subject to judicial review.

## II.    LEGAL STANDARD

The Court must affirm the Commissioner's denial of social security benefits so long as "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016). "Substantial evidence" is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id.* "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

## III. DISCUSSION

McCoy challenges the ALJ's decision prior to the fourth step of the five-step sequential evaluation regarding the determination of her RFC. Specifically, she challenges (1) the ALJ's evaluation of the treating physicians' opinions and (2) the evaluation of her subjective symptoms.

"Through step four of [the five-step] analysis, the claimant has the burden of showing that she is disabled." *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008). Thus, the burden of "providing medical evidence as to the existence and severity of an impairment" rests on the claimant. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

### a. Whether the ALJ Failed to Properly Assess the Medical Opinions

For claims like McCoy's filed on or after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c. These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[1] including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to consider the persuasiveness of any opinion or prior administrative medical finding using the same five factors: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the claimant, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4)

---

[1] "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review [] in your current claim based on their review of the evidence in your case record." 20 C.F.R. § 404.1513(a)(5) (internal citations omitted).

specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c). However, the rules make clear that supportability and consistency are the "most important factors" and therefore an ALJ must explain how he considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how he considered the remaining factors. *Id*. *See Brian O v. Comm'r of Soc. Sec.*, No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a),(b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)). Where there are two or more medical opinions or prior administrative medical findings on the same issue that are both equally well supported and consistent under 20 C.F.R. § 404.1520c(c)(1) and (2), but the opinions are "not exactly the same," the ALJ will articulate how he considered "other most persuasive factors in paragraphs (c)(3) through (c)(5)" with respect to those opinions. 20 C.F.R. § 404.1520c(b)(3).

McCoy argues that the RFC does not accurately set forth all of the practical effects of her impairments, thereby undermining the vocational testimony based on that RFC, because the ALJ failed to properly evaluate the opinions of two of McCoy's physicians: Dr. Daniel Paul, her primary care provider, and Dr. Syed Jaffri, her psychiatrist. She contends that if the RFC included the significant limitations advanced by these physicians, according to the VE testimony, McCoy would be incapable of sustaining work or would require a finding of disabled pursuant to the agency's grid rules given her age, education, work experience, and a sedentary level of work rather than a light level of work. *See* Doc. 9, p. 20 (citing 20 C.F.R. § 404, Subpt. P, App. 2, §§ 201.10).

4

### i. Dr. Paul

Dr. Paul began treating McCoy in July 2016 and continued through October 2018. *See* Tr. 515, 518, 607, 611, 615, 619, 622, 628, 632, 782, 1007, 1015, 1048, 1052. On June 5, 2018, Dr. Paul completed a "Treating Source Statement – Physical Conditions."[2] Tr. 795. Dr. Paul indicated that McCoy's symptoms would interfere with her attention and concentration so as to cause her to be off task over twenty-five percent of the day, that her attention and concentration is limited to fifteen minutes at a time before needing to take a break, and that she would need to miss over four days of work per month. Tr. 795–98. Dr. Paul opined that McCoy could "never"—defined as not even once in an eight-hour workday—lift or carry any weight at all, which Dr. Paul based on McCoy's "multiple soft tissue tender points c/w fibromyalgia." Tr. 796. Further, McCoy would only be able to sit, stand, or walk for less than one hour per day due to severe pain from fibromyalgia, and she would need to have the option to lie down or recline for fifteen to twenty minutes every one to two hours. Tr. 796–97. However, Dr. Paul stated she did not need a cane to ambulate effectively. *Id.* While she could "occasionally" use her feet or use her hands and arms to reach, handle, finger, and feel, she could never use her arms or hands to push or pull due to her fibromyalgia pain. Tr. 797. Finally, she could never perform any postural activities including climbing stairs, kneeling, stooping, crouching, or rotating her head or neck, nor could she ever be

---

[2] That same day, in a treatment note relating to McCoy's fibromyalgia, Dr. Paul stated that "[w]ith such severe pain rated close to 10, she is [advised] to stay off work (currently on disability)." Tr. 784. The ALJ did "not find the statement persuasive because it is based on the claimant's subjective rating of her pain. Further, it is not consistent with the many normal objective findings, and it is not supported by her daily activities caring for a pet, driving short distances, using a computer, caring for grandchildren, vacationing at the lake, managing finances, doing household chores, and working on flower beds when able. Further, the claimant had another EMG of her upper and lower extremities due to complaints of pain and numbness on June 19, 2018 that was normal." Tr. 34. McCoy's briefing does not object to the ALJ's treatment of this statement contained within the June 5, 2018 treatment note.

exposed to environmental factors such as unprotected heights, moving mechanical parts, extreme cold, or extreme heat.  Tr. 798.

The ALJ found Dr. Paul's June 2018 opinion not persuasive because (1) his treatment records did not support such significant limitations; (2) his limitations included her mental functioning, which is not his area of expertise and she had not yet seen a mental health professional; (3) it was a checklist form that indicated the limitations were related to severe pain from fibromyalgia, but he did not explain what objective evidence he relied on and it appears to have relied on the claimant's subjective complaints; and (4) the ALJ concluded that "if the claimant was as limited as indicated on this form, she would essentially be bed-ridden or require ongoing nursing care, which is not consistent with her ability to watch her grandchildren, care for her dog, shop, go out to lunch with friends, and to go boating."  Tr. 34–35.

McCoy objects to several of the ALJ's bases for finding Dr. Paul's opinions not persuasive. First, she argues that Dr. Paul's treatment records are consistent with the underlying record insofar as they demonstrate that her fibromyalgia and related pain were not adequately controlled.  The Court agrees that the record does reflect that McCoy's fibromyalgia and related pain were ongoing, and in addition to her consultations with Dr. Paul she sought evaluations from the Mayo Clinic and her rheumatologist. *See, e.g.*, Tr. 357, 401, 607, 611, 615, 619, 622.  But the question is not whether McCoy suffered pain from her fibromyalgia; indeed, the ALJ determined that this was a severe impairment.  Rather, the question the ALJ considered when reviewing Dr. Paul's opinion was whether the record reflected that there was sufficient evidence that the pain required the significant limitations Dr. Paul placed on McCoy.  As McCoy notes in her briefing, in September 2017 she told a treating provider that she had been in "unreal pain" for over ten years, Doc. 9, p. 6, yet her work records reflect that she worked a demanding, full-time job throughout that entire

period.  *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) ("As is often true in disability cases, the question was not whether Hogan was experiencing pain, but rather the severity of her pain."); *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996) ("While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability.")

The ALJ determined that the record did not reflect "such significant limitations" as Dr. Paul advocated, which included that during a work day she could never lift any weight, never push or pull, never perform postural activities like rotating her head and neck, never tolerate certain environmental conditions except occasionally operate a vehicle, only occasionally use her hands and feet, and only stand, sit, or walk for less than one hour in an eight-hour workday.  Dr. Paul did place a temporary limitation on McCoy in a December 2017 treatment note that after being on short-term disability, she could resume work for six hours per day, five days per week and attend company meetings, but she should not lift, push, or pull over five pounds.  Tr. 477.  However, this instruction was limited to a one-month period, at which point Dr. Paul stated he would review.  *Id*.  Further, the treatment note did not include any limitations on walking, sitting, standing, postural activities, or environmental conditions despite noting that on this visit she had multiple soft tissue tender points.  It also allowed her to lift, push, or pull weight up to five pounds, which is less of a limitation than reflected in the June 2018 opinion.  *See Anderson v. Astrue*, 696 F.3d 790, 792 (8th Cir. 2012) (ALJ appropriately discounted treating physician opinion where physician indicated substantial limitations including sitting or standing for a maximum of one hour due to pain from fibromyalgia, yet "the significant limitations [the physician] expressed in his evaluation are not reflected in any treatment notes or medical records.")

7

Further, as the ALJ pointed out, "if the claimant was as limited as indicated on this form, she would essentially be bed-ridden or require ongoing nursing care, which is not consistent with her ability to watch her grandchildren, care for her dog, shop, go out to lunch with friends, and to go boating." Tr. 34–35. The Court agrees with McCoy that the ALJ's reading of some activities was incomplete. Although there were instances when McCoy went boating, after one instance she stated that she "enjoyed the time but felt she overdid it and now her pain is up." Tr. 858. However, substantial evidence supports the ALJ's conclusion that Dr. Paul's significant limitations are generally inconsistent with McCoy's daily activities. For instance, Dr. Paul indicated McCoy could never lift or carry any weight at all, and yet McCoy testified that she watches her grandchildren every two weeks, including a three-month-old infant who she holds, although not for very long. Tr. 62–63. Further, while Dr. Paul indicated McCoy could sit, stand, or walk for less than one hour per day, this is to some degree inconsistent with her ability to shop, go out to lunch with friends, and to go boating, as well as with Dr. Paul's own conclusion that McCoy did not need a cane or assistive device to "ambulate effectively," defined as being "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Tr. 796. *See Anderson*, 696 F.3d at 794 ("While we recognize that a claimant need not be completely bedridden to be considered disabled, if a doctor evaluates a patient as having more physical limitations than the patient actually exhibits in her daily living, an ALJ need not ignore the inconsistency." (internal quotations and citations omitted)). The ALJ reasonably concluded that these activities, in addition to treatment notes such as those stating that McCoy's pain was better after beginning Gabapentin, Tr. 607, that in February 2018 she reported walking one mile per day, Tr. 915, that in May 2018 she stated to a therapist that she was in pain all the time but did not take pain medication, Tr. 845, were inconsistent with Dr. Paul's substantial

8

limitations. *See Cline v. Sullivan*, 939 F.2d 560, 568 (8th Cir. 1991) (complaints of pain can be discredited with evidence "that the claimant has received minimum medical treatment and/or has taken medications for pain only on an occasional basis.")

McCoy further argues that the ALJ was not permitted to discount Dr. Paul's opinion on the basis that it was a checklist form, because "Dr. Paul handwrote all of the Plaintiff's diagnoses, and detailed repeatedly the clinical findings and medical evidence supporting the limitations in his opinion." Doc. 9, p. 23. Although the Eighth Circuit has "never upheld a decision to discount [a medical source statement] on the basis that the 'evaluation by box category' is deficient *ipso facto*," *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005), it has affirmed an ALJ's decision to discount such opinions where they were conclusory and provided little to no support for those conclusions. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (affirming an ALJ's discounting of a physician's checklist-type opinion, because it consisted of "three checklist forms, cite[d] no medical evidence, and provide[d] little to no elaboration.") In *Anderson*, 696 F.3d at 794, the Eighth Circuit affirmed an ALJ's attributing lesser weight to a physician's opinion in part because "the only explanatory statement on the checkbox form indicates that [the claimant] 'has fibromyalgia which causes a lot of joint pain for her.'" *Id*. at 793. Similarly here, although Dr. Paul listed McCoy's diagnoses, the only further explanation provided on the majority of McCoy's limitations was "severe pain secondary to fibromyalgia" or "severe pain due to fibromyalgia." Tr. 796–98. Only with respect to Dr. Paul's determination that McCoy could never lift or carry any weight did he support this finding by stating "multiple soft tissue tender points [consistent with] fibromyalgia." Tr. 796. The Court cannot say that the ALJ erred in determining that the limited explanation to support the substantial limitations contained within the checklist form supported his determination that the opinion was not persuasive.

9

McCoy cites to *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017), where the Ninth Circuit determined that "the ALJ was not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers." However, this Ninth Circuit precedent is not binding here, and more importantly, it is inconsistent with Eighth Circuit precedent finding an unsupported or unexplained checklist form can factor into an ALJ's determination to discount a medical opinion. *See Anderson*, 696 F.3d at 794; *Wildman*, 596 F.3d at 964. McCoy also cites to *Adams v. Berryhill*, No. 6:16-CV-06109, 2018 WL 1053540, at *4 (W.D. Ark. Feb. 26, 2018), but there the Arkansas district court "acknowledged that a conclusory checkbox form has little evidentiary value when it cites no medical evidence and provides little to no elaboration" but found that the medical opinion at issue did not fall within that category where the physician "cited to Plaintiff's damaged knees and ankle, chronic ankle and knee pain, severe damage to both, and he is unable to hold down or keep a job," which was further supported by the claimant's medical discharge from the military, consistent x-ray and MRI findings, the physician's referrals for surgical intervention, a wheelchair, physical therapy, and an ankle brace, as well as the physician's prescriptions for Oxycodone and Hydrocodone for pain. Dr. Paul's explanations were less detailed and supported by the record, and therefore *Adams* is distinguishable.

Relatedly, the ALJ found that on the checklist form "Dr. Paul does not explain what objective evidence relied upon and he appears to have relied on the claimant's subjective complaints." Tr. 35. McCoy asserts that a patient's description of her symptoms is always considered in medical treatment. The Court agrees that "[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints," *Brand v. Secretary of Dept. of Health,*

*Educ., and Welfare*, 623 F.2d 523, 526 (8th Cir. 1980), and fibromyalgia in particular is largely a condition of painful symptoms. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (internal citations omitted) ("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.") Thus the mere fact that Dr. Paul incorporated these subjective complaints of pain into his opinion would not alone be enough to justify the ALJ's finding his opinion not persuasive.

However, although the Court could find substantial evidence to find Dr. Paul's opinion more persuasive than the ALJ did here, when viewing the ALJ's reasoning as a whole in the context of the entire record, there is also substantial evidence to support the ALJ's determination that the significant limitations that Dr. Paul placed on McCoy's abilities, supported only by a limited explanation, were not consistent with the record or sufficiently supported by his own treatment notes as discussed above. *See* 20 C.F.R. § 404.1520c(a) (citing "consistency" and "supportability" as the "most important factors" in assessing the persuasiveness of a medical opinion). *See also Andrews*, 791 F.3d at 928 (8th Cir. 2015) ("As long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." (quotation marks and citation omitted)). In determining a claimant's RFC, "the claimant has the burden of showing that she is disabled," *Steed*, 524 F.3d at 875 n.3, and therefore the burden of "providing medical evidence as to the existence and severity of an impairment" rests with McCoy. *Kamann*, 721 F.3d at 950. The ALJ's determination that the extensive limitations posed in Dr. Paul's treating source opinion were not persuasive is supported by substantial evidence in the record as a whole, and thus McCoy failed to meet her burden that a more limiting RFC as to her physical limitations was required.

11

### ii. Dr. Jaffri

McCoy first saw psychiatrist Dr. Syed Jaffri on June 22, 2018. Tr. 946. On October 18, 2018, Dr. Jaffri completed a "Treating Source Statement—Psychological Conditions," which was a checkbox form with space for some elaboration. Tr. 1001. Dr. Jaffri stated that his diagnosis for McCoy was major depressive disorder and PTSD and that the prognosis was "Poor." *Id*. Dr. Jaffri checked boxes indicating McCoy exhibited a variety of symptoms of depression, general anxiety disorder, and loss of cognitive abilities. Tr. 1002. Dr. Jaffri determined that McCoy would be extremely limited in almost every category—defined as unable to function independently, appropriately, affectively, and on a sustained basis—including in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; adapt or manage oneself; and understanding and memory. Tr. 1003–04. McCoy would be extremely limited in both her short-term and long-term memory, yet she was only moderately limited in remembering locations and work-like procedures, understanding and carrying out very short and simple instructions, and understanding and carrying out detailed but uninvolved written or oral instructions. Tr. 1004. However, she would only be able to maintain attention and concentration for less than five minutes before needing redirection or a break. *Id*. She also would not be able to work appropriately with the general public, co-workers, or supervisors, nor would she have any ability to maintain socially appropriate behavior or respond appropriately to changes in work settings. Tr. 1004–05. Finally, her symptoms would interfere with her attention and concentration so as to cause her to be off task over twenty-five percent of the day, and she would need to miss over four days of work per month. Tr. 1005.

The ALJ found Dr. Jaffri's opinion not persuasive because (1) it was a checklist form without explanation for the limitations other than citing the claimant's subjective statements; (2) his treatment notes did not support the limitations, because they showed waxing and waning

12

symptoms and her mental status exams show mostly normal findings; (3) on two occasions during the same time period Dr. Paul noted she was doing well since being placed on medication and she was not in acute distress, cooperative, with good eye contact, clear thought content, and intact cognitive function; (4) Dr. Jaffri's findings were not consistent with McCoy's ability to spend time with friends, watch her grandchildren, care for her pet, shop, and go boating with friends and family; and (5) Dr. Jaffri had only treated the claimant for four months at the time of his opinion, and "thus, [McCoy's] condition may not meet the durational requirements because she may improve with continued treatment."  Tr. 36–37.

As with Dr. Paul, McCoy again objects to the ALJ's dismissal of Dr. Jaffri's opinion based on the fact that it was a checklist form that only explained the limitations by citing to Plaintiff's subjective statements.  As noted, the Eighth Circuit has affirmed an ALJ's decision to discount a physician's opinion where it is stated in a conclusory checklist manner with little to no elaboration, *see Wildman*, 596 F.3d at 964, *Anderson*, 696 F.3d at 794, or where the opinion indicates that it is largely based on a claimant's subjective complaints, *see Kirby v.* Astrue, 500 F.3d 705, 709 (8th Cir. 2007).  McCoy claims that Dr. Jaffri's statement was not conclusory but rather contained "detailed handwritten explanations of clinical findings supporting his opinion as well as symptoms and limitations suffered by Plaintiff" and provided "examples for each of the extreme limitations found."  Doc. 9, p. 23.  Dr. Jaffri's statement does identify findings which support his overall assessment, listing "depressed mood, cognitive deficits – poor memory/attention/concentration, cry[ing] spell, hopelessness, helpless feeling, no energy, no motivation, nightmares/flashbacks." Tr. 1001.  Under each "extreme limitation," Dr. Jaffri lists an example of the limitation as instructed by the form.  For instance, Dr. Jaffri noted that an example of McCoy's extreme limitation in ability to understand, remember, or apply information is her difficulty cooking and

cleaning, and an example of her extreme limitation of ability to concentrate, persist, or maintain pace was her "taking several 15 house cleaning [sic]," presumably meaning that it took her extra time to clean her home. Tr. 1003. Although not overly thorough, the Court agrees with McCoy that Dr. Jaffri's form is not so conclusory, without elaboration, or based only on McCoy's subjective statements such that it could form the sole basis for discounting Dr. Jaffri's opinion, particularly given that he was evaluating mental limitations of depression and anxiety/PTSD, conditions which inevitably will rely to some extent on the claimant's statements. *See Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 821 (N.D. Ohio 2009) ("[P]sychology and psychiatry are, by definition, dependent on subjective presentations by the patient. Taken to its logical extreme, the ALJ's rationale for rejecting [the physician's] conclusions would justify the rejection of opinions by all mental health professionals, in every case.")

However, the remainder of the ALJ's reasons for discounting Dr. Jaffri's opinion provide substantial evidence to support the ALJ's finding that it was not persuasive. Dr. Jaffri's statement rated McCoy as extremely limited in almost every area of functioning and noted that she is only able to concentrate for less than five minutes at a time, and yet at each of her four appointments, which lasted between ten minutes and one hour, Dr. Jaffri listed her attention/concentration, thought process, thought content, and orientation to be intact or fair. Tr. 946, 950, 966, 972. In his third of four appointments noted in the record on August 15, 2018, McCoy stated that she was "doing well," was "feeling better and making good progress," "only reported moderate depression and anxiety mostly at her base line and situational," and "is doing well [and] denies any problem." Tr. 966. To be sure, Dr. Jaffri's notes at other appointments do indicate that McCoy exhibited depressed mood and anxiety, expressed symptoms congruent with those affects, and noted feeling

14

stressed easily, but the ALJ reasonably concluded that Dr. Jaffri's notes as a whole did not support the extreme limitations in almost every category.

This was further supported by Dr. Paul's treatment notes during the same time period where he noted on September 4, 2018 that McCoy was now on Trazodone and Zoloft and "appears to be doing well on that" despite occasionally needing Xanax for anxiety attacks.  Tr. 1007–08.  Although Dr. Paul noted on October 12, 2018 that she was still experiencing depression and anxiety, he described her as pleasant, cooperative, and alert, with intact cognitive function, good judgment and insight, and good eye contact, Tr. 1048–49, which stands in contrast to Dr. Jaffri's source statement from that same week concluding that McCoy would never be able to work appropriately with the general public, co-workers, or supervisors, nor would she have any ability to maintain socially appropriate behavior or respond appropriately to changes in work settings.  Tr. 1004–05.  This inconsistency lends support to the ALJ's determination.

The ALJ also found that the extreme limitations were not consistent with McCoy's ability to spend time with friends, watch her grandchildren, care for her pet, shop, and go boating with friends and family.  The ALJ also noted elsewhere that McCoy stated that she provided support for her family's emotional needs and hosts most of her family events.  Although McCoy correctly notes that she reported to Dr. Jaffri that she was "stressed out watching grand kids" and that an individual need not be completely unable to function in order to receive disability benefits, the ALJ was evaluating the persuasiveness of Dr. Jaffri's extreme limitations placed on nearly every category of functioning, including her ability to engage with others and maintain socially appropriate behavior.  "While [the Court] recognize[s] that a claimant need not be completely bedridden to be considered disabled, if a doctor evaluates a patient as having more physical

limitations than the patient actually exhibits in her daily living, an ALJ need not ignore the inconsistency." *Anderson*, 696 F.3d at 794 (internal quotations and citations omitted).

Finally, the ALJ noted the treatment notes show waxing and waning symptoms as well as normal mental status findings, and Dr. Jaffri's treatment relationship with McCoy had only lasted four months, indicating that "thus, her condition may not meet the durational requirements because she may improve with continued treatment." Tr. 37. McCoy argues that despite her waxing and waning mental health symptoms, she can still be determined as disabled if the exacerbations in her symptoms preclude ability to sustain work activity over time and on a regular and continuous basis, citing SSR 96-8p. While perhaps true, the Court cannot say that the ALJ erred by finding Dr. Jaffri's treatment notes and opinion, drawn from only his four-month treatment relationship, were insufficient to demonstrate that these waxing and waning symptoms would produce disabling symptoms for the required twelve-month period. This is particularly so in light of the fact that when posed with the question of whether the symptoms would persist for twelve months or more, Dr. Jaffri declined to answer. Tr. 1001. McCoy argues that she has demonstrated that her mental impairments "would preclude her from sustained work, as she experienced numerous exacerbations over the course of several years." Doc. 16, p. 5 (citing Tr. 845; 807; 847; 849; 809; 799–800; 855–56; 858; 863–65). But the record reflects that although she alleged an onset date of September 18, 2017, she did not speak to Dr. Paul about her anxiety until December 2017, and she did not seek mental health treatment until May 2018, nine months after her alleged onset date. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (holding that a claimant's "failure to seek medical assistance for her alleged . . . impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits" (citations omitted)). The treatment notes McCoy cites do not demonstrate a period of exacerbations over the course of

several years, but rather refer to treatment notes during a period of four months. *See* Tr. 845; 807; 847; 849; 809; 799–800; 855–56; 858; 863–65. Although during one appointment she discussed having mental health difficulties from the age of twelve, she also said she was never treated or diagnosed. Tr. 805–07. These records do not demonstrate that McCoy's mental health symptoms are disabling.

Further, McCoy has indicated that a primary source of her anxiety is being in public or social situations, and the ALJ appropriately imposed limitations in the RFC to accommodate for this, including by limiting her to occasional contact with supervisors and the general public and restricting her from any teamwork types of job duties or work with the general-public as a primary job duty. Tr. 32. The ALJ also accommodated for McCoy's difficulties with concentration and memory by including in the RFC that she can understand, remember, and carry out simple work instructions and tasks at a SVP 2 level. *Id*.

For the reasons discussed above, the ALJ's determination that Dr. Jaffri's opinion was not persuasive is supported by substantial evidence. McCoy failed to meet her burden of "providing medical evidence as to the existence and severity of an impairment." *Kamann*, 721 F.3d at 950. Substantial evidence supports the ALJ's determination that Dr. Jaffri's opinion was not persuasive, and McCoy did not meet her burden of providing sufficient evidence as to the severity of her mental health impairments that would require limitations beyond those imposed in the RFC.

### iii. State Agency Medical Consultant Opinions

McCoy further argues that regardless, the ALJ should have found the non-examining State Agency consultants' prior administrative medical findings to be equally consistent with and supported by the record as Dr. Paul's and Dr. Jaffri's opinions and therefore moved on to discuss the factors in 20 C.F.R. § 404.1520c(c)(3)–(c)(5) of relationship with claimant, specialization, and

other relevant factors. *See* 20 C.F.R. § 404.1520c(b)(3) (where there are two or more medical opinions or prior administrative medical findings on the same issue that are both equally well supported and consistent under 20 C.F.R. § 404.1520c(c)(1) and (2), but the opinions are "not exactly the same," the ALJ will articulate how he considered "other most persuasive factors in paragraphs (c)(3) through (c)(5)" with respect to those opinions).

In March 2018, State Agency Medical Consultants Dr. Michael O'Day and Dr. Martin Isenberg completed administrative medical findings by reviewing McCoy's medical files and forming opinions regarding her physical and mental impairments and their impact on her ability to work. Tr. 71–85. Dr. O'Day determined McCoy's COPD and asthma required limitations on exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation, but that treatment notes indicating she had good strength, normal bulk and muscle tone, full range of movements in her back, and no complaints of use of her hands indicated that she would be able to perform light work with the noted limitations. Tr. 81. The RFC recommended by Dr. O'Day was largely adopted by the ALJ, except that the ALJ further limited McCoy to only frequent bending, stooping, kneeling, crouching, and crawling. With respect to her mental limitations, Dr. Isenberg determined that McCoy had some limitations in sustained concentration and persistence, such as ability to work with others without being distracted and ability to carry out instructions, which required the limitation of performing well-learned, more repetitive tasks. Tr. 82. Further, given McCoy's reports of anxiety, she would be limited in her ability to act appropriately with the general public and respond appropriately to criticism from supervisors, and therefore she should be limited to settings without frequent contact with others. *Id*.

The ALJ found these opinions "persuasive," because the consultants provided adequate support for their opinion, they were consistent with the evidence at that time, McCoy's physical

examinations showed generally stable symptoms, McCoy did not take pain medication, and her mental status exams showed she had intact memory and concentration, an appropriate and cooperative attitude, but depressed and anxious mood. Tr. 38. Further, treatment notes showed she walked a mile a day in February 2018, cared for her grandchildren, hosted family events, and went boating and out to lunch with family and friends, and she testified that she shops with her husband, drives short distances, cares for a pet dog, and watches infant grandson a couple of hours every other week, all despite claims of having difficulty going out and concentrating. Tr. 38. The ALJ determined that because the consultant's findings were consistent with the objective evidence, they were persuasive.

McCoy does not object to any of these findings specifically but rather asserts that the State Agency consultants' findings were dated because "over 300 pages of medical evidence became part of the record after the State Agency review in March 2018, including the medical opinions at issue," and therefore these should not have been deemed more persuasive than Dr. Paul's and Dr. Jaffri's opinions. Doc. 9, p. 21. However, the ALJ acknowledged the gap in time when he determined that the consultants' conclusions were both consistent with the evidence "at that time" as well as with the remainder of the record in front of the ALJ, including that the physical examinations showed generally stable symptoms, that McCoy did not take pain medication, and McCoy's reports of her activities. Tr. 38. The ALJ made updates where necessary by determining "the updated evidence does not support the [consultant's] finding that the claimant has inflammatory arthritis." *Id.* The new regulations plainly prioritize consistency and supportability as the "most important factors" and explicitly state that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). The

ALJ clearly considered these factors and found these prior administrative findings to be more consistent with and supported by the record than Dr. Paul's and Dr. Jaffri's opinions. McCoy does not make any further argument regarding the specific substance of the consultants' reports or the ALJ's consideration of them. Viewing the record as a whole, the Court cannot say the ALJ erred in finding the state agency consultant's opinion was more persuasive. Thus, because the ALJ did not find the opinions of Dr. Paul and Dr. Jaffri to be equally as persuasive as the consultants', he was not required to "articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)" as McCoy suggests. 20 C.F.R. § 404.1520c(b)(3).

In sum, the ALJ's treatment of the medical opinions and prior administrative findings was supported by substantial evidence.

### b.  Whether the ALJ Erred in Assessing McCoy's Credibility

McCoy argues that the ALJ erred in evaluating the weight of her subjective symptoms. "In assessing a claimant's credibility, the ALJ must consider all of the evidence relating to the subjective complaints, the claimant's work record, observations of third parties, and the reports of treating and examining physicians" as well as "the claimant's daily routine; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions." *Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). An ALJ may discount a claimant's complaints if there are inconsistencies in the record as a whole, and the Court must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (internal quotation omitted).

McCoy first notes that "[t]he above arguments with respect to the ALJ's findings regarding Plaintiff's work-related limitations are, naturally, also attacks on the ALJ's credibility finding, since the issue of the weighing of opinion evidence and the evaluation of whether a claimant's self-described limitations are consistent with the record are inextricably intertwined." Doc. 9, p. 28. The Court has addressed these arguments above.

In addition, McCoy contends that the ALJ erred when he failed to consider her twenty-two years of work history, with earnings for every quarter from 1996 up until her alleged disability onset in 2017. Tr. 167–68. However, an ALJ's decision "need not include a discussion of how every *Polaski* factor relates to the claimant's credibility." *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007). Further, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). Here, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSR 16-3p." Tr. 32. *See* 20 C.F.R. § 404.1529 ("We will consider all of the evidence presented, including information about your prior work record.") Further, the ALJ did acknowledge McCoy's prior work. Tr. 37 ("The undersigned finds the evidence shows the claimant had a demanding job, doing medium to heavy, skilled tasks that often required working 12-hour days.") This is sufficient to meet the ALJ's obligations under the regulations. *See Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018) ("Adkins argues we should remand for a proper evaluation of her claim because the ALJ failed to consider her long work history in assessing credibility. However, the ALJ specifically stated that he considered all the evidence presented related to the claimant's prior work history. An ALJ need not explicitly discuss each relevant factor.") (internal citation omitted).

Therefore, the ALJ's consideration of McCoy's subjective symptoms is supported by substantial evidence.

**IV. CONCLUSION**

For the reasons discussed above, the ALJ's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  June 21, 2020
Jefferson City, Missouri

22